The next case called for oral argument is P&S Grain v. Williamson County. Counsel? Thank you. Justices, opposing counsel, may it please the court. I'm Ronald E. Osmond of the firm of Ronald E. Osmond and Associates, and I represent plaintiffs of P&S Grain, LLC, an Illinois limited library corporation company, and B.W. Bowman Corporation of Health, a Missouri corporation fully qualified to do business in Illinois. This matter is before the court today with two issues to be resolved. First issue is my motion to strike issue one of the defendant's appellate's brief, contending that the omitted complaint should be dismissed for failure to provide notice to the Attorney General under Supreme Court Rule 19, and that plaintiffs have waived their constitutional challenge as a result of the alleged failure to notify the Attorney General. The court ordered that this issue would be taken with the case. I would point out to the justices that the Illinois Department of Revenue is a party defendant in this case in the omitted complaint and was served with summons on October the, November the 19th of 2008. Now, unless the court has questions on this issue, I will not discuss this and will stand on the pleas and briefs and request that the plaintiff's motion to strike be granted. The second and extremely narrow issue before the court today is does an Illinois LLC and or a Illinois have standing to bring an action attacking the procedure utilized to enact and the constitutionality of the School Facility Tax Act. The School Facility Tax Act is a new statute and a new tax that was enacted by the legislature that is designed to provide funds for specific school purposes that and those purposes are defined within the act. In order to enact this sales tax on the residents of a county, it requires a vote, a referendum of the county residents. Now that vote, the process can be started by either a resolution of the county board or by a vote of the county board after all of the school districts having over 50 percent of the students enrolled in that county has ordinances and resolutions requesting the county board to place it on the ballot. Now, Williamson County was the first county to avail itself of this procedure that has been established by the legislature. The Illinois, the School Facilities Tax Act has not been tested in any court to this time. Referendum was held and school facility tax was narrowly passed in Williamson County. As a result of that, there was a complaint filed on behalf of PNS Graydon B.W. Bowman and later an amended complaint was filed after many motions. This matter now comes before this court as a result of the enactment of that tax and as a result of a seven count, it's important, this is a seven count amended complaint that was filed by the plaintiffs on November the 13th, 2008 and a motion to dismiss filed by defendants on December the 5th of 2008. The Honorable Judge Speroni granted the defendant's motion and on January the 29th of 2009 dismissed the case with prejudice in accordance with 735 ILCS 52619A9. Judge Speroni's order is over three pages long and only addressed the issue of standing to bring the suit. No other issue was addressed in Judge Speroni's order and that is the only issue before this court. Judge Speroni correctly stated on the top of page three of his order that if the court determines that the parties do not have standing, there is no need for any further inquiry and the plaintiff's amended complaint must be dismissed with prejudice. That's the correct statement of standing is the only issue that Judge Speroni addressed. Judge Speroni then went on to decide that the plaintiffs did not have standing as taxpayers by citing, stating without support or citation at the top of page two of the order, a brief sentence that says the plaintiffs do not impose statewide or even in adjoining counties that the plaintiffs and anyone else for that matter can abort the sales tax entirely by choosing not to purchase goods and services subject to the sales tax in Williamson County. Under this ruling, no individual, corporation, association or other entity would have any standing to attack this statute because anyone can go out of the county someplace else to purchase. This certainly is not the law and it's not the law in Illinois. He also ruled that since the plaintiffs who are collectors of this tax and the plaintiffs are collectors of the tax as well as being taxpayers, that since the plaintiffs are reimbursed for their expenses in collecting the tax, that they were not harmed and thus did not have standing as tax collectors. And finally, Judge Speroni, again without analysis or citation, ruled that the plaintiffs did not have standing since neither plaintiff could vote. Does he say that in his order? Yes, he does, Your Honor. Well, he doesn't. He just says that they can't vote. They're not voters. But he doesn't go out and say that's a reason they don't have standing. By implication, I guess there must be a reason it's in the order, but... Have you been reading my notes? It says it is unclear whether Judge Speroni made this statement as dicta... For the record, I haven't read any of the notes. Or is it any part of the basis of dismissal of the case? I don't know what Judge Speroni meant. I don't know if it's dicta or not, but he put it in his order. He evidently felt it important enough to put it in his order. Well, and the same thing is true about the statement in his order about you can go outside the county to buy goods. He doesn't really say because of that, that means you don't have standing, but it must be there for some reason would be your argument, I guess. That's my argument, Your Honor. I mean, if this is dicta, it's dicta, but I'm assuming that all of those things weighed upon the judge's mind whenever he made his decision that there was no standing, and can only assume, and one needs to be careful about assumptions, as we all know, but that's what I am assuming, and as I say, you're reading my notes, because I don't really know what Judge Speroni means. If that were the law, then we would have a bulletproof statute that could never be tested by anyone. Now, I think in order to understand this matter and properly analyze the court's decision, it is important to point out that the end of the complaint contains seven separate counts, which for purposes of a summary judgment motion, the allegations therein must be taken as true. One of these counts is a constitutional challenge, two alleged invalidity of the county ordinances, one claims the Department of Revenue filing certificate is invalid, one request declaratory judgment, one request injunctive relief, and one request a TRO. Now, defendants briefs and filings concentrate on what I believe is a straw man issue, that neither PMS Grain or BW Bowman Corporation are citizens as required for injunctive relief under 735 ILCS 511-301. There is nothing in Judge Speroni's order to indicate that he considered that. Okay, that was a question I had as well, because his ruling was entirely based on the taxpayer issue, which would cover both your common law challenge and 11-301. That's correct. Okay, but he made no ruling about whether these corporations are citizens under 11-301. That's correct, and it was argued. I mean, I have to say that, you know, that it was argued extensively, but it was nothing in his ruling. Now, I want to discuss each of the judges' rulings separately and compare them to what I understand to be the law of the State of Illinois. First, as I've indicated earlier, in paragraph 11 of the amended complaint, the plaintiffs have alleged that they have an interest in the taxpayers and provisions of Public Act 950675, which was the public act that amended several statutes and created the School Facilities Tax Act. This allegation must be taken as truth for purposes of summary judgment. Thus, they are taxpayers. Now, it's well-settled law in Illinois that a taxpayer has standing to challenge the constitutionality and use of taxpayer funds. I'm going to go through each case that's been referenced in my brief on page 22 that talks about constitutionality of the retailers' occupation tax. There's several cases cited on page 22 of my brief. I do want to point out a case that's been decided recently by this court, which was in July of 2008, Stephen T. Malek v. The City of Belleville, 891 Northeast Section 1039. Now, in that case, this court allowed Mr. Malek to maintain a claim to enjoin the misuse of public funds in a situation in the City of Belleville in the Tiff District. And the court stated, it is established that a taxpayer can enjoin the misuse of public funds based upon taxpayer ownership of such funds and their liability to replenish the public treasury for the deficit. P&S Brain and B.W. Bowman are taxpayers and, as such, have a right to test the constitutionality of this statute. In addition to having standing as taxpayers, they have standing as tax collectors. Judge Speroni's order indicates that they do not have standing because they have been reimbursed all their expenses. That argument has been made repeatedly over the years, and the Supreme Court has ruled repeatedly that that's not the case, that the liability for these taxes is on the retailer. The retailer may pass them on, but the liability is on the retailers, and if the retailers decide they don't want to pass it on, they still have to pay the sales tax. That gives them standing, and there's a line of cases very long cited in the briefs. So Judge Speroni, in his order, is exactly, I hate to say this, but I will, he's 180 degrees out on that issue. What about the fact that the costs of collection are reimbursed, as Judge Speroni indicated? The cost of collection? Right. That's a no moment in the Supreme Court case, Your Honor. They discuss that, they talk about it, and they say that's fine, but the character of the tax is the retailer's occupation tax, and if you look at the statute, it's the retailer's occupation tax, the ballot says occupation tax, which is a matter we'll discuss in a minute, but yes, the expenses are reimbursed, but that doesn't change the character of the tax, and the case that we have cited is right on the point, which is the Springfield Rare Coin Galleries versus J. Thomas Johnson, Director of Revenue, 115 Illinois 221, 1986 Supreme Court case, and here's what they say. Illinois retailers are liable for taxes under the Retailer's Occupation Tax Act, whether they have successfully collected use taxes from their customers or not. Moreover, as we have stated, the retailer's occupation tax is levied upon the seller, and the custom of passing the burden to the buyer by means of a price increase does not alter its nature. It is the legal incidence of the tax that controls, citing National Bank versus Isaac, the court goes on to say, in summary, the retailer's occupation tax is plainly a tax upon retailers. This exemption exclusion, talking about the exemption in the amendment, as a modification to the tax has the effect of altering retailers' tax liability. Accordingly, we hold that the plant has standing challenged the constitutionality of exclusion. So that's well-said law in Illinois. Now, the next issue then becomes is that that's a case that interprets the Retailer's Occupation Act. We have a tax under a new school or facility. Courts are normally in a quandary as to weighing, is this a similar tax? What should I do here? You don't have any question here because the act itself, the School Facilities Tax Act, incorporates all the definitions, all the remedies, and specifically incorporates Section 35, which is the Retailer's Occupation Act. You'll find that in Section 1006.7, I believe, of the School Facilities Tax Act. So those cases are directly on point. The court doesn't have to question and guess whether this is a similar tax. Is this an referendum? It says it is in the statute. The legislature has indicated, gave, specifically incorporated the rights, remedies, definitions. Now, so we talked about two of the three things. Now, and again, I don't really know what the court meant whenever he said, talked about being, not being a voter. And the only thing I can think of is maybe that he was responding to the continual ground beat that we've seen in, that we've heard at the motion arguments that we've seen in the briefs, and this continual ground beat from the action under 735-511-301. I don't know if that's what the court was trying to say, that they're not citizens, they're not voters, but I want to address that issue. First, it's important to note, as we started out, that, in fact, this is a seven-count complaint, only two counts involved relief. So even if 735-ILCS-511-301, even if the court were to find that they're not citizens, there's 500 counts here, that there's no prohibition about being citizens, they have to be taxpayers and have standing. But in this instance, the plaintiffs are citizens for the purpose of school facility taxing. Now one would think that a term citizen would have a definition that we could all agree on. Such is not the case. In reality, the definition of citizen has not been outlined in 11-301, and no case to date has specifically cited under 11-301, and counsel correctly points out, opposing counsel, that we haven't cited any cases. Well, neither have they, and that's because there's no cases out there under this section that determine what is a citizen. In the absence of that, the defendants characterize the definition of citizen as a legal term of art and use bits and pieces of information from various cases and dictionaries to put together a definition of citizen that supports their theory. That's fine. That's what we do as lawyers. They do not, however, utilize the clear statutory language of the underlying statutes that at issue to arrive at their definition. In other words, they don't look at the School Facility Tax Act, which incorporates the terms and definitions of the Retailer's Occupation Tax Act. And I start with the analysis from a case that's cited repeatedly by the defendants, and that is the Charles Framing Company versus the Goldsmith and Siegel Company, a 1923 Illinois Supreme Court case, and that court says a citizen is a person inhabiting a city, town, or state and possessed of some rights because of that fact. Now, citizen is a person. Now, what is the definition of person for the purposes of the School Facility Tax Act? We need to go then to the Retailer's Occupation Tax Act, which has the definitions that have been incorporated by the School Facilities Tax Act, and it defines person, and that definition is any national individual, firm, partnership, association, joint stock company, joint adventure, and it is adventure, not venture, public or private corporation, P.W. Bowman, limited liability company, P.A.S. Green, or a receiver, executor, trustee, guardian, or other representative appointed by any court. So in my analysis of citizen for Section 301, in order to maintain injunctive relief, just the two counts, I believe that you need to go to the underlying statute and do the analysis, and the underlying statutes allows, quote, a citizen in this circumstance, and that the plaintiffs are citizens in this circumstance. Now, will they be citizens in every circumstance? No. If you read the Friend case, the Friend case talks about that. They're citizens for some purposes, they're not citizens for other purposes. So it's not as cut and dry as a P.A.S. Green, a limited liability company, can't be, quote, a citizen because it can't vote, which I think may be what Judge Peroni was trying to get to, although I don't know. But in my analysis, when I look at the underlying statutes, look at the definitions that's required to be used, I come to the conclusion that the plaintiffs are, in fact, citizens for the purposes of this lawsuit. And even if they're not citizens for the purpose of this lawsuit, the only disability to them is that they cannot maintain injunctive relief. They still have standing as a tax collector and payer of the tax to bring the case. We would ask that the court do not overturn Judge's ruling and turn it to the trial court. Thank you. Thank you, Counsel. Counsel? Please, the court. My name is Mary Rose. I am with the law firm of Tewitt, Keeney, Cooper, Mohan & Jackson in Edwardsville, Illinois. And I happen to represent the five school districts involved in this matter, which would be the Johnson City School District, the Marion School District, the Crab Orchard School District, the Heron School District, and the Carterville School District. On behalf of the five school districts, a couple of things I want to stress and want to note for the purposes of this argument for the court. First of all, this is, as counsel indicated, is a new statute. And Williamson County happens to be the first county within the state to go through the procedure of asking for referendum approval of a tax to be imposed in the county for purposes of school construction, school facilities. On February 5th, 2008, the voters of Williamson County did, in fact, approve a 1% sales tax on the sales of goods. It's under the Retailer's Service and Occupation Statutes that counsel has already referred to. This, I think it's important to note that the referendum was held on February 5th. Plaintiff P&S Grain did not file an action until approximately three and a half months after the passage of the referendum. So, that complaint wasn't filed until, I believe, it was May 20th, 2008. So, we have a three and a half month gap from the time which the referendum was held until the time when an actual complaint was filed. The other thing that I think is interesting to note here is that we do have two corporations who happen to be parties to the litigation. One is Bowman Oil, who is a Missouri corporation, which I find very interesting that counsel doesn't reference Bowman Oil being a party to this because I think you have, under any analysis, a clear concern or question whether or not they could even remotely have standing under the statutes of Illinois to oppose or to challenge the question of the ballot. And also, P&S Grain, but to get back to talk about kind of where I think we've kind of come a little circle that counsel hasn't talked about. He originally referenced in his arguments to this court today that, yes, this had taken a procedural road before we got to the arguments last December before Judge Speroni ultimately had the motions to dismiss. The plaintiffs filed a complaint, or P&S Grain filed an initial complaint. The county at that time, the school districts were never named a party to the lawsuit. The school districts had to take the overt action of opposing this lawsuit. The county filed a motion to dismiss, and one of the bases the county filed a motion to dismiss on was that they did not properly serve the Attorney General's Office or the proper state agencies challenging the constitutionality of the statute as required by Rule 19. Now, we have some arguments before this court on the arguments that were raised by the brief relating to this issue. First of all, in response to that, and just briefly, I'll let my motion stand, our response stand to the motion as is. First of all, the appellees, the case law is very clear. Appellees are not bound by the basis that are asserted by the plaintiffs in their briefs or the appellants in their briefs. We have a right to assert any basis within the record to support the decision. Secondly, we would disagree with counsel's standard on what actually the review is in this court. Just because a court entered an order looking or entered an order dismissing a claim, this court has the right and the ability to go back and dismiss and affirm that decision on any other basis that is supported by the court, by the record. The Rule 19 argument is clearly contained within the record on appeal. It was originally argued by counsel or originally asserted by counsel. What's interesting after that is when we get the complaint amended, and that's all of a sudden when we get this unique provision in the Code of Civil Procedure being the sections 11-301 through 303 arguments. So, it kind of goes through that road, and I think when you're looking at this issue, I think it's important to look at and understand what the procedural history is of this particular case. Now, the way that I happen to see this case on behalf of the school districts is... Are you moving to standing now? No, I'm ready to move to standing. I would like for you to address Mr. Osmond's argument about naming and serving the Illinois Department of Revenue and whether that takes care of notice on the constitutionality issue. First of all, I will address that. Thank you for asking me that. My belief is that it does not address and it does not take care of the initial issue. First of all, if you carefully review Rule 19 of the Supreme Court rules, it requires that it be submitted simultaneously at the time of the filing of the lawsuit. It doesn't go back and talk about amendments. As a matter of fact, the second that a constitutional issue is raised is when notice is supposed to be provided. P&S Brain raised the issue, the constitutional issue, in their initial pleas before the court, which was done on May the 20th. Okay, the purpose of the rule is so that the state will have an opportunity to come in and argue it, and we haven't reached that issue in this case, even though we're already up on appeal once. So what's been lost? What's been lost is the rule requires that it be done immediately because I think the state can come in and make certain procedural arguments that they are entitled to do. Secondly, I don't think it's sufficient just to name the Department of Revenue as the party. This is a state statute where the constitutionality of the state statute is being challenged. I think the Attorney General's office has the right to come in and to make an argument and present whatever they want to to the court, if they so desire. We don't know what they would have done if they had received notice. Now, going back to the way that I see this case on I think the first thing I think you have to really look at is the section 11-301-304 of the Illinois Code of Civil Procedure, which, you know, quite frankly, this court doesn't see this kind of case every day, and I appreciate that this is a very unique case, but one of the things that you have seen is you have seen this same statute be raised in this court just a year ago, and with the Malik decision that counsel referred to. But what did this court do with that case? It says if you're going to challenge and want to enjoin the distribution or collection of taxes, this is some mechanism that you have to go through to get that done. You have to use these provisions within the Illinois Code of Civil Procedure. That is the basis and the thrust of a lot of the arguments that were held before Judge Ferroni. The next part, the second argument that I will talk about is that section 3-01-3301 of the Code of Civil Procedure has two requirements. They must be both a citizen and a taxpayer. Number three, my third argument I'll make to the court, is plaintiff's declaratory judgment action. Standing by itself does not afford the plaintiffs the relief that they're actually seeking, and plaintiffs lack common law standing to bring any declaratory judgment action. Going back to the arguments about whether or not the plaintiffs are in fact a the required mechanism is under 11-301-304. I again refer this court to this case you decided a year ago, being Malik versus the city of Beldo, which is 384 Illinois Appellate 3rd, 465. Specifically in that case, this is the mechanism if you want to enjoin payment of taxes, this is the mechanism that's required. So what's required under the statute? They must be a taxpayer and a citizen of the state. The statute itself uses a conductive and, requiring that both standards be met. So they have to be both a taxpayer and a citizen. So what did we argue, or what are the arguments that were made to the trial court? The trial court didn't necessarily focus on taxpayer, although we argued it. The real arguments focused on whether or not the corporation is a citizen under the Illinois statutes. You know, plaintiff comes up with this nice neat little argument saying, well you really have to go back to the retailer's occupation of service tax acts to get the definitions. Well, we don't look at statutes that way. What we do is when the legislature puts a definition in a statute and generally doesn't define it, we go back and we look at how has the courts generally defined that work? What does it mean to be a citizen? That's when we referred this court back to the friend case that plaintiff, that counsel has already referred to, and which we've argued extensively. But what happened in that case? What that case basically had to do with was whether or not there was diversity jurisdiction for a federal court case. And the court acknowledged and admitted that it only comes up with the definition of citizen only because of convenience in order to be able to establish diversity jurisdiction pursuant to the federal rules of civil procedure. That's what really, I believe, that that friend court says. It doesn't, I don't think that it intended, and I think it explicitly sort of carves out this nicely built exception, but doesn't say don't apply it generally. And in this case, we're looking at what is the definition of a citizen. The friend case, you agree, don't you, that the friend case certainly does not hold that for all purposes a corporation is never a citizen. That's right. And friend has been interpreted in subsequent decisions as being limited to its own facts. That's correct. Okay. And that's what I'm saying, is I think it's limited to that, and there has been no court that's been willing to extend it any further. And I think also when you look at Bowman Loyal, they are a Missouri corporation, and any attempt, I think, to try to get them as a citizen of the state of Illinois would be any stretch. Similarly, you have P&S Grain, who is an Illinois limited liability company, and that's what all of the allegations are, that they're a limited liability company. I asked you to look through actually the amended complaint, and you won't see that they reference that they're a citizen. It's conveniently left out of the amended complaint. It's not in there. If we agree with you, we would be holding that the corporation could never challenge it, would never have standing to challenge a tax under 11-301. That's correct. But I think... Is there any legislative history that we know of that says anything either way about it? We could not find any legislative history that would help give us an answer, but we'd be more than happy to provide that to the court, had we been able to do that. As you know, these things kind of go through the legislature without a lot of public debate. I want to move on now, and the other thing that I want to talk about, and I think is really pretty telling, is if you go back and look at the Chicago Teachers Union case versus the Board of Education, which we've cited in our briefs, and the site for you is 189 Illinois 2nd 200. It's a 2000 Illinois Supreme Court case, and that case was actually under section 11-301, and actually was an taxpayer suit. But what was very interesting about it is you had a Chicago Teachers Union as one of the parties, plus you had several individuals who also happened to be employed by the Chicago Public Schools as a party. The case went up on appeal, but what we don't know is exactly what happened, because when we got to the Illinois Supreme Court and the Appellate Court, the Teachers Union was no longer a party for the purposes of this argument. I can hypothesize that probably the argument of standing was raised and determined that they didn't have standing. But what they did have is they had individuals who were not in the proper party, who met the taxpayer and citizen standard, and therefore the case proceeded forward. We don't have those facts here. Now, the other interesting part about this, and moving on a little bit to Plaintiff's Declaratory Judgment action, and this issue of common law standing, the only real mechanism for the plaintiff to get the relief that they are requesting is for an injunction or a restraining order, because a declaratory judgment action gets them nothing but a law declared unconstitutional. It doesn't stop or enjoin the payment of taxes, and I think you have to look at it and see exactly how this has kind of transpired. When the original complaint was filed, it has a declaratory judgment action. It was then in the arguments that were raised, hey, we got to get an injunction. And the mechanism for us to get an injunction, we got to go to the section 301 and 303. And there are cases, I think, if you look back at long-standing Illinois Supreme Court jurisprudence, will say, if you want to stop the collection of taxes, you got to have an injunction. That's exactly, I mean, in Springfield Rare Coin case, it was a declaratory judgment action to declare the statute unconstitutional, period. That's what it was. Are you suggesting the Department of Revenue would continue to collect taxes after the court has declared the tax unconstitutional? I don't know exactly what actually happened in that Springfield Rare Coins case. Well, they were supposed to collect taxes on the Kruger end. The court held it unconstitutional. That's all they did. There wasn't any. It's an Illinois Supreme Court case. But I don't think that this argument that I'm making was ever argued in the Springfield Rare Coins case. I would also suggest to you that you go back and jeopardize and look at the Springfield Rare Coins case and will find that it has never been cited by a court for the proposition of standing after the decision was rendered. Never was cited. What does that mean? We're bound by the decisions of the Illinois Supreme Court. If you go back and look at the Rain Tree case, which is actually a 2004 Illinois Supreme Court case, it involves an issue of impact fees. Impact fees, if you're not familiar with it, is where a party comes in and tries to create a huge subdivision and because there's going to be an area, the need for monies for school construction. Ironically, almost the same issue we're dealing with here. What happens when you're under the impact statute is that the actual owner of the property, the developer, is responsible for the tax. But, like under this statute, has the right to pass that tax along to the person who's buying the house. And what the Illinois Supreme Court said in that case didn't go back and for some reason didn't cite the Springfield Rare Coins case. And we even tried to get the briefs to see if this issue was argued before the court. Couldn't do that. But in looking at this case, they don't cite that Springfield Rare Coins case. But what the court does say is because you have passed that along, that cost alone to someone else, you have no right to challenge the standing to the constitutionality of the statute because you don't have standing. The tax in this case is a retailer's occupation tax, just like in Springfield Rare Coin. The argument you're making was addressed specifically in that case before the Illinois Supreme Court and they said that the retailer does have standing, the corporate retailer. And all I can say is I can't see in that case that these arguments that they weren't a citizen, the corporation wasn't a citizen. That doesn't matter for common law, does it? Ever, whatever rights, no. That doesn't matter for common law standing? No, but I think... Which was the only thing that was at issue in Springfield Rare Coins. Right, and the other thing that also didn't happen in Springfield Rare Coins that I can see is that they ever asserted a challenge under 301 versus 303 and argued that that was the exclusive remedy for challenging it. The other thing that's very interesting about the timing is actually the statute that we're talking about in section 301, 303, I think was first codified on July 1, 1982, and I think that was exact timing when the Springfield Rare Coins case came into being. So we're actually having new statutory provision that I'm not certain people really were aware of. I also want this court to look at, in addition to the 303 case, I think that that is probably more of an idea of where the Supreme Court would likely go. It is hard to, although I appreciate your comments that they're the same statute, it's hard to see the differences between the impact of these statutes and the retailer's occupation statute for purposes of standing. The issue is you can pass along the costs, and in this case you can pass along the cost. A couple of other things that I want to make sure that I want to address on the Springfield Rare Coins case is that that particular case, again, is sort of an anomaly. Hasn't been cited for the proposition of standing, for some reason wasn't cited in that Rain Tree decision, and I don't know why it wasn't. Nonetheless, we feel that the Rain Tree case has a better analysis of where the Supreme Court will be. I see that my time is up and would like to ask this court to consider the arguments that we cited in our brief. Hopefully we briefed them well for you, and hopefully you will affirm and ask that you affirm the decision of the judge. Thank you, counsel. Counsel? Thank you. Rule 19A states, in any cause or proceeding in which the constitutionality or preemption by federal law, the statute, ordinance, administrative regulation, or other law affecting the public is raised, and to which action or proceeding the state or the political subdivision, agency, or office affected is not already a party, the litigant raising the constitutional or preemption issue shall serve an appropriate notice thereof from the Attorney General, State's Attorney, Municipal Counsel, or Agency Attorney, as the case may be. Now, when I went to law school, they told me that when you amended a complaint, that the first complaint, unless it was specifically incorporated, had no bearing. That's what we did. Now, counsel can speculate as to what my motives were. Maybe I just wasn't smart enough to do it. That's not against the law, illegal, or fact. I amended the complaint. I made them party defendants, and they are so interested in this case that they've been served with summons, and they haven't even appeared. They're not here objecting. It's the defendants are raising the issue that the Attorney General has not been notified. Attorney General has been notified of this hearing. They're on the service list. If they were concerned about this, they would be. They're not because they are a party that has been notified. The only other thing I want to point out to the court, and I'm not going to speculate about what courts might do, could do. Maybe this was argued. Maybe this was not. I'm not aware of any case that says because a Supreme Court decision is not cited, that it's somehow another. It's not the law. The Springfield Rare Coin case is the law of the state of Illinois. In order to give the relief that is being requested by the defendants, this court has to overrule Springfield Rare Coin. There's no way around it. Now, the Friend case has been decided, and as Judge Stewart pointed out, it's a very particular fact-based decision. And in fact, in the Friend case, there's language that says, at the beginning on page five, they talk about that they are not citizens within the meaning of Section 2 of Article 4 of the Constitution, which provides that the citizen of each state should be entitled to all the privileges and immunities of citizens of the federal states, though they are persons within the same section who may be deprived of their property without due process of law or denied the equal protection of the law. Judge Stewart's exactly correct. This case is based upon its own unique facts. There is not a definition of citizen ever been defined by any court under Section 301. I believe the analysis that I went through earlier in these specific statutes is correct, and that the complaint, the case should be overruled and sent back to the court for further proceedings. I'm not going to waste any more time. If the report's time to have any questions, I'd be glad to answer them. I think we've asked them. Thank you. All right. Thank you. We appreciate the briefs and arguments of both counsel. We will take this case under